IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MOBILE NURSING OPERATIONS, LLC,

    **Plaintiff,**

    v.                                                                      CASE NO.:   1:22-CV-00263-KD-B

SHAUL KOPELOWITZ,

    **Defendant.**

**MOTION TO INTERVENE BY SKA CAPITAL, LLC; AZALEA HEALTH AND REHAB, LLC; AND AZALEA PROPCO, LLC AND BRIEF IN SUPPORT**

Pursuant to Rule 24(a)(2) and Rule 24(b) of the Federal Rules of Civil Procedure, SKA Capital, LLC; Azalea Health and Rehab, LLC; and Azalea Propco, LLC ("Proposed Intervenors") respectfully move this Court for an order permitting them to intervene as Defendants and Counter-Plaintiffs as a matter of right or, in the alternative, with the Court's permission to protect their interest in the subject Promissory Note. In support, the Proposed Intervenors state as follows:

### INTRODUCTION

This lawsuit brought by Mobile Nursing Operations seeks to recover amounts allegedly due on a Guarantee Agreement signed by Defendant Shaul Kopelowitz. (Doc. 1, ¶¶ 15–17). As a necessary element of its claim,

{B4463806}                                                                              1

Mobile Nursing Operations alleges that Proposed Intervenor SKA Capital, LLC breached the Promissory Note. (Doc. 1, ¶¶ 9–14). Further, Azalea Health and Rehab and Azalea Propco have a claimed interest in the Promissory Note as a contractual remedy for their claims against Mobile Nursing Operations. (See Letter, Doc. 5-4, PageId.116; State Court Complaint, Doc. 24, PageID.192–203). In fact, all three Proposed Intervenors, whom Mobile Nursing Operations chose not to join to the instant lawsuit, have filed a separate action against Mobile Nursing Operations in the Circuit Court of Mobile County, Alabama to protect their respective claims against and interest in the Promissory Note. (Doc. 24, PageID.192–203).

In short, the amount of the Promissory Note remains unsettled and must be resolved between Mobile Nursing Operations and Proposed Intervenors Azalea Propco, Azalea Health and Rehab, and SKA Capital. Because a ruling on the Promissory Note is required before this Court can find that Mr. Kopelowitz is liable on his guarantee, the Proposed Intervenors should be permitted to intervene to protect their interest in the Promissory Note. The Proposed Intervenors further request this Court stay this matter while the state court addresses that logical first step in the analysis: whether the Promissory Note was breached and the amount outstanding (if any) on said Promissory Note. (See Proposed Motion to Stay, attached as Ex. A).

## FACTS AND PROCEDURAL POSTURE

This lawsuit arises out of a multiparty contractual agreement for the sale and transfer of property, assets, and operations of a nursing home. On November 20, 2020, Plaintiff Mobile Nursing Operations entered a Contract of Sale (also known as a Purchase and Sale Agreement or "PSA") with Proposed Intervenor Azalea Propco for the sale of the skilled nursing facility located at 1758 Springhill Avenue in Mobile, Alabama. (PSA, Doc. 5-1). The agreement included the assignment of a ground lease by Mobile Nursing Operations to Azalea Propco, sale of the building and improvements on the property by Mobile Nursing Operations to Azalea Propco, and transfer of the operations of the skilled nursing facility from Mobile Nursing Operations to Proposed Intervenor Azalea Health and Rehab. (See id.). The sale was to be completed at a mutually agreed-to "Closing Date." (See id.).

Azalea Propco and Azalea Health & Rehab are affiliates that are each ultimately owed by Shaul Kapelowitz and Shalom Lerner.[1] Shaul Kopelowitz is also the sole member of SKA Capital, which was the maker of the Promissory Note.

The sale was closed on or around April 30, 2021. Among the agreements signed at the closing were the following:

---

[1] For subject matter jurisdiction purposes, both individuals are New York citizens.

{B4463806}   3

- **Operations Transfer Agreement (OTA)**. The OTA transferred operations of the skilled nursing facility to Proposed Intervenor Azalea Health and Rehab. (OTA, Doc. 5-2). The OTA includes provisions for indemnity for losses and damages resulting from:

  > i) operation of the Facility by Old Operator prior to the Closing Date, (ii) Old Operator's use or occupancy of the Property or the condition thereof prior to the Closing Date, and (iii) the Excluded Liabilities; and (iv) any inaccuracy or breach of any representation, warranty, covenant, agreement or obligation contained in this Agreement or in any of the Other Documents.

  (Doc. 5-2). Importantly, Azalea Health and Rehab has filed a lawsuit against Mobile Nursing Operations for concealed water intrusion issues ("the condition" of the property "prior to the closing date") and unresolved life safety code violations ("breach of any representations . . . contained in this agreement") for which it has incurred substantial losses. (Doc. 24, PageID.192–203)

- **Bring Down Certificate.** On April 30, 2021, Mobile Nursing Operations certified that the "representations and warranties" made by Mobile Nursing Operations in the earlier-executed PSA remain "true and correct" as of the closing date. (Bring Down Certificate, Doc. 5-3). These representations include statements like: "To the Seller's knowledge, Seller and Property are in compliance with all

laws, rules, regulations, health and sanitation codes, [etc.]." (Doc. 5-1, p. 10). Proposed Intervenor Azalea Propco has made a claim against Mobile Nursing Operations for breach of these representations. (Doc. 24, PageID.192–203).

- **Promissory Note.** This note underlies Plaintiff's original claims. It, in essence, represents a promise of SKA Capital to repay a loan of $2,000,000 to Mobile Nursing Operations, LLC. (Doc. 1-1). Shaul Kopelowitz is the guarantor in the event of default by SKA Capital. (Doc. 1-1, PageID.8). The Promissory Note incorporates by reference the indemnity terms of the OTA and PSA, allowing SKA Capital to set off any amounts owed under the OTA or PSA, including specifically claims by Azalea Health & Rehab and Azalea Propco for the water intrusion and Life Safety Code problems. (Doc. 1-1, PageID.8; see also Doc. 24, PageID.192–203). Further, Azalea Propco and Azalea Health and Rehab signed the Promissory Note acknowledging the incorporation of the indemnity terms of the OTA and PSA. (See Doc. 1-1, PageID.8–9).

- **Guarantee Agreement.** The Guarantee Agreement was signed by Defendant Shaul Kopelowitz and is the basis for Plaintiff's claims against Mr. Kopelowitz. (Doc. 1-2). Mr. Kopelowitz's obligations under the Guarantee Agreement are predicated on the failure of SKA

Capital to make payments, to the extent they are due, under the Promissory Note.

As stated above, the new owner, Azalea Propco, and the new operator, Azalea Health and Rehab, have discovered at least two issues that were concealed before the closing date and are now causing significant losses. Those losses are due to be indemnified against under the OTA and PSA and, further, are losses that should be set off against the promissory note by Kopelowitz and SKA Capital. (See Doc. 5-4, PageId.116; Doc. 24, PageID.192–203)).

The parties have since been engaged in a dispute about losses incurred by Azalea Propco and Azalea Health and Rehab due to water intrusion and life safety code violations that existed while Mobile Nursing Operations owned and operated the facility. In partial response to the dispute, Mobile Nursing Operations filed the subject Complaint seeking recovery only on the Guarantee Agreement.

In response to the Complaint, Mr. Kopelowitz argued that SKA Capital, Azalea Propco, and Azalea Health and Rehab (now the proposed intervenors) should be joined as necessary parties. (Doc. 5). The issue was briefed, and the Magistrate Judge issued a Report and Recommendation recommending that Mr. Kopelowitz's Rule 12 Motion be denied and implying that the burden is on the non-parties to take action, rather than Mr. Kopelowitz. (See Report

and Recommendation, Doc. 26, PageID.229) ("Notwithstanding the instant lawsuit against Kopelowitz for breach of the Guaranty, there is nothing in Section 4.6 that prevents Azalea Health and Propco from filing a separate action against MNO and obtaining a final nonappealable judgment that triggers SKA's right to setoff against any amounts due under the Note.").

In the meantime, SKA Capital, Azalea Propco, and Azalea Health and Rehab—who Plaintiff chose not to join and argued against the joinder of in this case—filed their own action against Mobile Nursing Operations in the Circuit Court of Mobile County, Alabama alleging, among others, breach of contract, misrepresentation, and suppression arising out of the sale of the subject nursing home. Mr. Kopelowitz has since sought a stay of this case to allow the state court to resolve the underlying dispute about the claims against the Promissory Note. (Doc. 24). The Proposed Intervenors intend to join that Motion to Stay, if allowed to intervene, to protect their respective interests in the Promissory Note.

## LEGAL ARGUMENT

Once it is determined that a proposed intervenor has standing, the proposed intervenor can then intervene as a matter of right, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, or, in the alternative, be permitted to intervene under the Court's discretionary power, pursuant to

Rule 24(b) of the Federal Rules of Civil Procedure. As set out below, the Proposed Intervenors have both standing and good grounds to intervene.

### A. The Proposed Intervenors have standing based on their existing disputes with Mobile Nursing Operations and their interest in the Promissory Note.

"Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007); *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 974 (8th Cir. 2014). The party asserting standing must show that it has or will suffer an injury, causation, and redressability. *Dillard*, 495 F.3d at 1330; *Chiles v. Thornburgh*, 865 F.2d 1197, 1204 (11th Cir. 1989).

In this case, the PSA and the OTA are incorporated by reference into the Promissory Note, giving Azalea Propco and Azalea Health and Rehab rights to indemnity and set-off against the Promissory Note. (Doc. 1-1, PageId.8–9). Moreover, the SKA Capital is the maker of the Promissory Note, breach of which is a prerequisite to Plaintiff's recovery in this case. The Court's findings as to liability on Promissory Note, the PSA, and OTA would then necessarily implicate the Proposed Intervenors, such that the proposed Intervenors could suffer injury and have their rights to indemnity or in the Promissory Note impaired.

### B. The Proposed Intervenors should be permitted to intervene as of right under Rule 24(a)(2).

Under Rule 24(a)(2), a person has a right to intervene in an existing lawsuit if that person files a timely motion that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). This breaks down into the following four-part test:

> (1) whether the application for intervention is timely; (2) whether the putative intervenor has an interest relating to the property or transaction which is the subject of the litigation; (3) whether the intervenor is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) whether his interest is represented inadequately by existing parties.

*Ciba Specialty Chemicals Corp. v. Tensaw Land & Timber Co.*, 233 F.R.D. 622, 625 (S.D. Ala. 2005). This Court in *Ciba* further stated: "A district court must grant a Rule 24(a) motion if all four prerequisites are satisfied." *Id.* (citing *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996)).

#### 1) The Motion to Intervene is timely.

To intervene as a matter of right, the motion must be made in a timely manner. FED. R. CIV. P. 24(a)(2); *Ciba*, 233 F.R.D. at 625. Courts in the Eleventh Circuit generally look at the following factors to determine timeliness: (1) the length of time of which the movant knew about the case; (2) the extent of any prejudice to the existing parties if the motion was granted; (3) the extent of prejudice to the movant if the motion is denied; and (4) any "unusual circumstances militating either for or against a determination that" the motion is timely. *Chiles*, 865 F.2d at 1213.

"Timeliness," however, is not "a word of exactitude or of precisely measurable dimensions. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). There must be "accommodating flexibility toward both the [C]ourt and the litigants." *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970); *see also Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993) ("No ironclad rules govern this determination."). For example, in *Chiles*, the movant filed its motion seven months after the complaint had been filed, but the court allowed the intervention because the discovery had not begun and no party would have been unduly burdened. 865 F.2d at 1213. And, in *Georgia*, intervention was allowed even though the motion was filed six months after the complaint was filed, discovery was largely complete, and the parties had already agreed upon a briefing schedule. 302 F.3d at 1259-60. The court

reasoned that the motion was timely because there would be no delay in the proceeding and the court had not taken any signification action. *Id.*; *see also Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970) (motion filed more than a year after action commenced was timely even through discovery was complete); *Innis, Speiden & Co. v. Food Mach. Corp.*, 2 F.R.D. 261, 265 (D. Del. 1942) (motion filed more than four years after the action commenced was timely because a trial date was not set until the motion was filed).

Here, the Proposed Intervenor's motion is timely. Although Plaintiff filed its Complaint in July, the parties have been engaged in Rule 12(b) motions and no scheduling order has been entered. The parties have exchanged initial disclosures but no other discovery has been issued. Further, this Motion to Intervene is being filed before any deadline to add parties or amend the pleadings, which is not yet set. No existing party would be prejudiced by allowing the intervention because the case is still in its earliest stages, and Defendant Kopelowitz has already moved to stay the case. In fact, this Motion was filed earlier than those in *Chiles* and *Georgia*, where the intervenors waited a half-year before filing their motions. Both motions were granted because no significant action had occurred in the case. *Chiles*, 865 F.2d at 1213; *Georgia*, 302 F.3d at 1259-60 ("SeFPC's intervention did not delay the proceedings and the court had yet to take significant action.").

Moreover, as discussed in more detail below, any prejudice to the schedule of the case or to Plaintiff is outweighed by the significant prejudice suffered by the Proposed Intervenors if they are excluded from the dispute about amounts owed under the Promissory Note that underlies Plaintiff's claims against Mr. Kopelowitz.

### 2) Proposed Intervenors have has an interest in the subject matter of this litigation.

A movant for intervention must also claim an interest "relating to the subject of the action," and this interest must be "direct, substantial, and legally protectable." FED. R. CIV. P. 24(a)(2); *Ciba*, 233 F.R.D. at 625; *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995).

Here, Proposed Intervenors have an interest in their own contracts, including the Promissory Note, the PSA, and the OTA. Moreover, the Guarantee Agreement incorporates by reference the Promissory Note, which in turn, expressly incorporates the PSA and the OTA. Because the Guarantee Agreement, on which Plaintiff makes its claims, is predicated on the Promissory Note, PSA, and OTA, the parties to those agreements have an interest in this case. In fact, the Proposed Intervenors have filed a case in state court, in part, to protect the interests they claim in the Promissory Note. (See Doc. 24, PageID. 192–203). Additionally, as shown in the next section, a ruling on the Guarantee Agreement implicates the rights that

Azalea Propco, Azalea Health and Rehab, and SKA Capital have in their respective contracts.

### 3) The Proposed Intervenors' ability to protect their interests would be impaired by the disposition of this litigation.

A movant for intervention must also be situated such that disposing of the action would impair or impede the movant's ability to protect its interest in the matter. FED. R. CIV. P. 24(a)(2); *Ciba*, 233 F.R.D. at 625. Here, disposition of this case would seriously impair Proposed Intervenor's ability to protect its interest.

Initially, a determination that Mr. Kopelowitz is liable as a guarantor requires a finding that SKA Capital is in breach of the Promissory Note, thereby implicating and deciding the obligations of SKA Capital. Further, necessary defenses of Kopelowitz include set-off due to Mobile Nursing Operations' breach of the PSA and OTA. The Court's findings as to liability on the PSA and OTA would then necessarily implicate the other parties to those agreements: Azalea Health and Rehab and Azalea Propco. Plaintiff will also likely argue that the set-off against the Promissory Note is the "sole remedy" for Azalea Propco and Azalea Health and Rehab, meaning that any decision on the Promissory Note will have a direct impact on Azalea Propco and Azalea Health and Rehab. (See Doc. 1-1, PageID.8–9). Stated another way, the intertwined nature of the contracts and the parties creates an

environment where ruling on one necessarily impacts and prejudices the others.

Additionally, the Proposed Intervenors have made claims in their state court case that could be impacted by a ruling in this case. Because the claims by the Proposed Intervenors in the state court case include threshold questions that must be resolved before this Court can enter judgment on the Guarantee Agreement, the state court case should logically be allowed to proceed first. Mr. Kopelowitz has moved for a stay to preserve that logical order. But, in anticipation of Plaintiff's argument that Mr. Kopelowitz is not the proper party to assert the defenses of the Proposed Intervenors or to seek a stay, the Proposed Intervenors have been forced to move to intervene for the purpose of protecting their own interests. To the extent the case is allowed to proceed without the Proposed Intervenors, the rulings in this case could affect those in the state court case. *See Chiles*, 865 F.2d at 1214 ("Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply that practical disadvantage which warrants intervention as of right."). Therefore, because it could negatively impact the Proposed Intervenors in their contractual and legal rights, the Proposed Intervenors interests would be impaired if the case proceeds without them.

### 4) The existing parties do not adequately represent the Proposed Intervenor's interests.

The final prong is whether the movant's interest is represented inadequately by the existing parties. Fed. R. Civ. Pro. 24(a)(2); *Ciba*, 233 F.R.D. at 625. This burden is "treated as minimal." *Georgia*, 302 F.3d at 1255, 59 (also noting that movants have a "light burden" to demonstrate inadequacy of representation). The Supreme Court has even held that "[t]he requirement . . . is satisfied if the applicant shows that representation of his interest 'may be' inadequate . . ." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972).

Mobile Nursing Operations has already argued, and the Magistrate Judge has already recommended a ruling, that Mr. Kopelowitz is not able to assert the affirmative defenses of the Proposed Intervenors. (See Doc. 10, PageID.131) ("Kopelowitz cannot assert an alleged defense of the Borrower . . . . Kopelowitz also contractually waived the right to raise any such defense."). As such, Mr. Kopelowitz may not be able to represent the interests of the Proposed Intervenors. If nothing else, Mobile Nursing Operations cannot credibly argue that, on one hand, Mr. Kopelowitz is barred from asserting any defenses while, on the other hand, claiming he can adequately represent the interests of the Proposed Intervenors.

Moreover, there has been no suggestion in Plaintiff's prior briefing that Mr. Kopelowitz can represent the interests of Azalea Propco or Azalea Health and Rehab, which are not wholly owned by Mr. Kopelowitz. While their interests may be mostly aligned, these are separate entities with their own set of defenses that might, or might not, overlap with those of Mr. Kopelowitz. *See Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1208 (D. Nev. 2009) (requiring a showing that the "present party will undoubtedly make all of the absent party's arguments"). Either way, Mobile Nursing Operations' argument that Mr. Kopelowitz cannot assert the defenses of the borrower should preclude—or estop—it from arguing that Mr. Kopelowitz can adequately represent the interests of the borrower.

## C. <u>The proposed intervention satisfies the requirements for permissive intervention.</u>

Even if Proposed Intervenors are not permitted to intervene as a matter of right pursuant to Rule 24(a)(2), they should still be allowed to intervene under the permissive intervention rule. Rule 24(b), in part, provides: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). In exercising this discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3); *see*

*also Ciba*, 233 F.R.D. at 628 ("Simply put, permissive intervention is appropriate where . . . the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."). Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenor because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

In support, and in the interest of brevity, the Proposed Intervenors adopt the arguments made above as to the timeliness, interests, and common facts asserted above.

## CONCLUSION

Proposed Intervenors respectfully request that this Court grant their Motion to Intervene and enter their Answer and Counterclaim in Intervention.

    /s/ Weathers Bolt
M. Warren Butler (ASB-3190-R56M)
Weathers Bolt (ASB-9445-T95A)
STARNES DAVIS FLORIE LLP
11 N. Water Street
RSA Battle House Tower, Suite 20290
Mobile, AL 36633-1548
wbutler@starneslaw.com
wbolt@starneslaw.com
Attorneys for Intervenors

## CERTIFICATE OF SERVICE

      I hereby certify that on the 30th day of November 2022, I have served a copy of the foregoing pleading via CM/ECF, as follows:

Archibald T. Reeves, IV
areeves@mcdowellknight.com

James P. Pewitt
attorneypewitt@gmail.com

                                            */s/ Weathers Bolt*
                                            Weathers Bolt