IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MOBILE NURSING OPERATIONS, LLC,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION 1:22-00263-KD-B** |
| | : | |
| **SHAUL KOPELOWITZ,** | : | |
| **Defendant.** | : | |

ORDER

This matter is before the Court on a Motion to Intervene filed by three (3) non-parties SKA

Capital, LLC (SKA), Azalea Health and Rehab, LLC (Azalea), and Azalea Propco, LLC (Propco)

(Doc. 29) and their *proposed* Answer and Counterclaim (Doc. 30),[1] Plaintiff Mobile Nursing

Operations, LLC (MNO)'s Opposition (Doc. 37), and the non-parties' Reply (Doc. 41).

I. <u>Background</u>

As summarized in the Report & Recommendation (Doc. 26):

Plaintiff Mobile Nursing Operations, LLC ("MNO") brings this one-count diversity action against Defendant Shaul Kopelowitz ("Kopelowitz") alleging a breach of a Payment and Performance Guaranty Agreement (the "Guaranty"). (See Doc. 1). Kopelowitz is a citizen of New York and the sole member of SKA Capital, LLC ("SKA"). ... MNO's complaint states that on April 29, 2021, SKA executed a Promissory Note... [1] in favor of MNO for the principal amount of $2,000,000.00, in connection with SKA's purchase of MNO's interest in a skilled nursing facility in Mobile, Alabama. ... On the same date, Kopelowitz executed the Guaranty, in which he personally guaranteed to MNO "the full, regular and punctual payment and performance" of SKA's obligations under the Note. ....

MNO alleges that SKA defaulted under the Note by failing to make required payments of principal and interest... On May 13, 2022, MNO notified SKA in writing that it was exercising its option to declare the entire principal amount of the Note and all accrued interest thereon immediately due and payable in the event of a default, and it demanded payment of all sums due under the Note within ten days.... On May 27, 2022, MNO notified Kopelowitz in writing that SKA had failed to comply with its obligations under

---

[1] Propco and Azalea are affiliates owned by Defendant Kopelowitz (and non-party Shalom Lerner). Defendant Kopelowitz is the sole member of SKA, the maker of the Promissory Note.

the Note, and it demanded that Kopelowitz pay all sums due under the Note and Guaranty within ten days....Kopelowitz did not comply with MNO's demand....

On July 1, 2022, MNO commenced the instant action against Kopelowitz alleging that he breached the Guaranty by failing to pay to MNO all sums due under the Note...

[1] The Note was signed by Kopelowitz as manager of SKA. (Doc. 1-1).

(Doc. 26 at 1-2).

The Promissory Note represents a promise by SKA to repay a loan of $2,000,000 to MNO. (Doc. 1-1). Defendant Kopelowitz is the Guarantor of the Promissory Note in the event of SKA's default and guaranteed "absolutely and unconditionally, payment and performance of the Guaranty Obligations." (Doc. 1-2). The Guaranty is "a continuing obligation -- "continuing, absolute, irrevocable and unconditional under all circumstances[]" and "Guarantors acknowledge and agree that Guarantors' obligations hereunder shall apply to and continue with respect to any of the obligations of Borrower under the Loan Documents[.]" (Id. at 5 at ¶7). MNO can pursue collection of amounts due/owing under the Note, in the event of SKA's default, against either SKA or Kopelowitz (Paragraph 7 Remedies); in this case MNO chose to "exercise any or all of its rights, powers or remedies under the Guaranty[]" against Kopelowitz, invoking his obligations under the Guaranty Agreement. (Doc. 1-1 at 5 at ¶7).

Additionally, Section 4.6 of the Promissory Note provides for indemnification and set-off:

4.6  Indemnification and Set-Off.  Notwithstanding anything contained herein or in the PSA or in the OTA to the contrary, ***upon a final non-appealable judgment***, Maker shall have the right to set-off against any amounts due under the Note with respect to all amounts due in connection with (a) Holder's obligations to indemnify Purchaser under the PSA, and (b) Holder's obligations to indemnify New Operator under the OTA (collectively, the "Indemnification Obligations"). All amounts offset against the Note in accordance with the terms thereof shall be deemed repaid. Maker's right of setoff against the Note shall be Purchaser's and New Operator's sole recourse with respect to the Indemnification Obligations and, for the avoidance of doubt, shall be further subject to the time limitations for indemnification as set forth in the PSA and OTA. Each of Purchaser and New Operator are joining into this Note for the purpose of acknowledging the foregoing provisions.

(Doc. 1-1 at 3-4 at ¶4.6 (emphasis added)).  MNO is the Holder of the Promissory Note. SKA is the Maker. Propco is the Purchaser. Azalea is the New Operator.

Moreover, in connection with the execution of the Promissory Note for the purchase of MNO's business interest, additional contracts were executed. Specifically, MNO entered into a Contract of Sale (Purchase and Sale Agreement or PSA) with Propco for the sale of the nursing facility. The PSA included the assignment of a ground lease to Propco and the sale of the building and improvements on the property to Propco. Additionally, an Operations Transfer Agreement (OTA) transferred operations of the facility from MNO to Azalea. Both the PSA and OTA provide for indemnity including:

> (b) Seller agrees to indemnify, save, protect, defend and hold harmless Buyer and its employees, affiliates, managers, members, officers, directors and agents, from and against all Losses arising from, out of, or relating to (i) operation of the Property by Seller prior to the Closing Date, (ii) Seller's use or occupancy of the Property or the condition thereof prior to the Closing Date, and (iii) the Excluded Liabilities, (iv) any liabilities and obligations arising from the Ground Lease prior to the Closing Date, and (v) any inaccuracy or breach of any representation, warranty, covenant, agreement or obligation contained in this Agreement or in any of the closing deliveries set forth in Section 2.3 hereof.

and

> b. Old Operator agrees to indemnify, save, protect, defend and hold harmless New Operator and its employees, affiliates, managers, members, officers, directors and agents, from and against all Losses arising from, out of, or relating to (i) operation of the Facility by Old Operator prior to the Closing Date, (ii) Old Operator's use or occupancy of the Property or the condition thereof prior to the Closing Date, and (iii) the Excluded Liabilities; and (iv) any inaccuracy or breach of any representation, warranty, covenant, agreement or obligation contained in this Agreement or in any of the Other Documents.

(Doc. 5-1 at 20 at ¶8.3 (PSA); Doc. 5-2 at 17 at ¶160( OTA)).

The Promissory Note also incorporates by reference the OTA and PSA, allowing SKA to set off any amounts owed under the OTA or PSA. (Doc. 1-1 at 3 at ¶4.6). Propco and Azalea signed the Promissory Note acknowledging the incorporation of the indemnity terms of the OTA and PSA. (Doc. 1-1 at 8-11).

After closing on the property, Propco (the new owner) and Azalea (the new operator) discovered issues with the property related to water intrusion -- issues that were allegedly concealed and which continue to cause significant losses. As a result, and after MNO filed suit on the guaranty,

SKA, Propco, and Azalea filed a state court lawsuit against MNO in the Circuit Court of Mobile County, Alabama for claims related to those losses (concealed condition of the property) alleging, among others claims, breach of contract, misrepresentation, fraudulent inducement, and suppression.

What brings the non-parties to federal court now, seeking intervention, is that stemming from that state court action, Azalea and Propco seek to have any state court damages (if determined) indemnified and SKA seeks to have that indemnified sum (once determined) set-off against any amounts that Kopelowitz may be found liable for as Guarantor of the Promissory Note in this action. Based on what those non-parties seek, on November 30, 2022, SKA, Azalea, and Propco filed the present motion to intervene in this case as a matter of right per Rule 24(a)(2), or in the alternative with the Court's permission per Rule 24(b) of the <u>Federal Rules of Civil Procedure</u>. In support of the motion, the non-parties submitted a *proposed* Answer and Declaratory Judgment Counterclaim (per Rule 24(c) requiring that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought[]").  (Doc. 30). These non-parties seek entry of a declaratory judgment against MNO as follows:

> [MNO] ... seeks payment on a Guarantee Agreement that is, in turn, contingent on SKA ... failure to pay its obligations, if any, on the Promissory Note. Because certain damages and indemnity owed by MNO ... to Azalea ... and .... Propco are due to be set off against the Promissory Note, SKA .... obligations under the Promissory Note should be drastically reduced or have been satisfied.
>
> There exists an actual case or controversy between the parties about the amount owed on the Promissory Note, if any, which directly impacts the amount owed on the Guarantee Agreement originally made the basis of this suit.

(Doc. 30 at 11-12). In otherwords, this intervention is about reducing any debt owed by SKA.

## II.   <u>Motion to Intervene</u>

### A.   <u>Intervention as a Matter of Right - Rule 24(a)(2)</u>

SKA, Azalea, and Propco seek intervention as a matter of right to attain a Declaratory Judgment that the amounts owed on the Promissory Note are reduced or satisfied by a potential setoff judgment and thus Kopelowitz is relieved of its obligations under the guaranty. Rule 24(a)(2) governs

intervention as a matter of right:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:…**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The non-parties allege that "the PSA and the OTA are incorporated by reference into the Promissory Note, giving ... Propco and Azalea .... rights to indemnity and set-off against the Promissory Note .... SKA ... is the maker of the Promissory Note, breach of which is a prerequisite to Plaintiff's recovery in this case. The Court's findings as to liability on Promissory Note, the PSA, and OTA would then necessarily implicate the Proposed Intervenors, such that the proposed Intervenors could suffer injury and have their rights to indemnity or in the Promissory Note impaired."  (Doc. 29 at 8).

A party seeking to intervene via Rule 24(a)(2) must show: 1) the application is timely; 2) an interest relating to the property/transaction which is the subject of the action; 3) the party is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect its interest; and 4) its interest is inadequately represented (or protected) by the litigating parties. See, e.g., Technology Training Assoc. v. Buccaneers Ltd. Pp., 874 F.3d 692, 695-696 (11ᵗʰ Cir. 2017); Jasper Wood Products, LLC v. Jordan Scrap Metal, Inc., 2014 WL 1017904, *1-2 (S.D. Ala. Mar. 14, 2014). A court must deny a motion to intervene if the movant fails to prove even one of these elements. Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989) (intervention is allowed "[i]f he establishes *each* of the four requirements[]" (emphasis added)); Athens Lumber Co., Inc. v. Federal Election Com'n, 690 F.2d 1364, 1366 (11th Cir. 1982) ("[f]our requirements must be met before an applicant may be entitled to intervention of right[]").

Movants must identify a "direct, substantial, legally protectible interest in the proceeding" such that the movant is "must be at least ... [a] real part[y] in interest in the transaction which is the subject of the proceeding." Chiles, 865 F.2d at 1214 (citing Athens, *supra*). See also Huff v. Commissioner of IRS, 743 F.3d 790, 796 (11th Cir. 2014).  While the movant's interest need not be "of a legal nature

identical to that of the claims asserted in the main action," the interest must still be legal in nature and "something more than an economic interest." Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting United States v. South Fla. Water Mgmt. Dist., 922 F.2d 704, 710 (11th Cir. 1991)); Chiles, supra at 1214. Notably, a purely economic interest will not suffice. Id. The movant's "interest" in the action must be "sufficiently direct and immediate to justify his entry as a matter of right." Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 154 (1967). There must be an interest that derives from a legal right. See, Mt. Hawley, 425 F.3d at 1311-1312 (denying intervention where the basis to do so was to simply have a collectible pool of funds). And an economic interest *contingent* on the outcome of *other* pending litigation is not a legally protectible interest under Rule 24(a)(2) and is speculative. Id. at 1311 ("[f]urther, Rigaud's interest is purely speculative because it is contingent upon his prevailing against Muria International and Sandy Lake Properties in the wrongful death action[]"). See also, AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1310-1311 (11th Cir. 2004) ("...to intervene as of right under Fed.R.Civ.P. 24(a)(2), a nonparty must have a 'direct,' 'substantial,' and 'legally protectable' interest in the action rather than a merely speculative or contingent interest[]" (citing Brennan v. N.Y. City Bd. of Ed., 260 F.3d 123, 139 (2nd Cir. 2001)); Typhoon Media Corp. v. CVS Pharmacy, Inc., 2013 WL 12090020, *3-4 (M.D. Fla. Aug. 22, 2013) ("'Purely economic' interests do not support a motion to intervene as of right. *Mt. Hawley*, 425 F.3d at 1311 ... a third party is not entitled to intervene as of right in an insurance-policy dispute when he is not a party to the insurance policy, even if the court's judgment in the insurance-policy dispute may affect the third party's ability to recover funds from the insured[,]" "a third-party creditor's claim [a judgment creditor's interest] that judgment against defendants would affect his ability to recover funds owed to him by defendants' company was 'purely economic' interest and thus not a legally protectible interest that warrants intervention[,]" and "a judgment creditor's interest is purely economic, and by itself does not warrant intervention as a matter

of right[]"); CSpan Fin., LLC v. Blane, 2012 WL 3639051, *2 (S.D. Fla. Aug. 23, 2012) (third-party creditor's claim that judgment against defendants would affect his ability to recover funds owed was "purely economic" and not a legally protectable interest warranting intervention); Laube v. Campbell, 215 F.R.D. 655, 657 (M.D. Ala. Mar. 27, 2003) ("[a]n interest satisfying the other requirements of Rule 24(a)(2) must be a 'direct, substantial, legally protectable interest in the proceeding.... [The proposed intervenors] must be at least be ... real part[ies] in interest in the transaction which is the subject of the proceeding[]' *Chiles*, 865 F.2d at 1213-1214 .... [t]he 'focus ... .... is whether the intervenor has a legally protectable interest in the litigation[]' *Chiles*, 865 F.2d at 1211 .... [i]nterests that are contingent upon some future events and which are "purely a matter of speculation" are not "the kind of protectable interest ... necessary to support intervention as of right." *ManaSota–88, Inc. v. Tidwell,* 896 F.2d 1318, 1322 (11th Cir.1990) (proposed intervenors' interest was 'purely a matter of speculation' at the time of their motion and though proposed intervenors claimed that the outcome of the case would have a profound impact upon its members, 'such a generalized grievance' did not state an interest sufficient to grant intervention as of right)[]"); Acceptance Indem. Ins. Co. v. Southeastern Forge, Inc., 209 F.R.D. 697, 700–701 (M.D. Ga. 2002) ("[t]he Court finds that the *possibility* that JSL may be subject to a future claim for indemnification does not satisfy Rule 24(a)'s requirements that an intervenor of right must demonstrate a legally protectable interest in the proceedings ...." (emphasis in original)).[2]

The non-parties have failed to establish an "interest in the subject matter of the litigation [that] is direct, substantial and legally protectable." Georgia v. U.S. Army Corps of Engineers, 302 F.3d

---

[2] See also e.g., Deutsche Bank Nat. Trust Co. v. F.D.I.C., 717 F.3d 189, 195 (D.C. Cir. 2013) ("... other circuits have generally concluded that a party may not intervene in support of a defendant solely to protect judgment funds that the party wishes to recover itself[]" (citing Mt. Hawley)); Medical Liability Mut. Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1008 (8th Cir. 2007) (intervenor's "only interest ... is to ensure that the defendants in her state lawsuit have sufficient resources to satisfy any judgment she might obtain against them. This interest is too remote and indirect to qualify as a cognizable interest under Rule 24(a)(2)[]"); Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 222 (3rd Cir. 2005) ("Appellants here have no property interest in the .... policies nor do they have any other legally protectable interest in the policies. Rather, they have the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right[]").

1242, 1249 (11th Cir.2002). The non-parties have failed to establish "something more than an economic interest[]" and "[a] purely economic interest will not suffice." Mt. Hawley, 425 F.3d at 1311, South Fla. Water Mgmt. Dist., 922 F.2d at 710, and Chiles, *supra* at 1214. Instead, the contracts the non-parties identify are not at issue in this federal case and the non-parties do not assert as much. There is no litigation in this case about entitlement to indemnification or set off, or interpretation of those sections of the contracts. The non-parties merely assert that the right to collect, as set forth in the contracts, is at issue in this federal case. However, it is not.

The personal Guaranty executed by Defendant Kopelowitz -- guaranteeing SKA's debt under the Promissory Note -- is absolute, unconditional, and a contractual relationship between Kopelowitz and MNO. This means that MNO may rightfully pursue its remedy against Kopelowitz as Guarantor without first seeking payment from SKA, as the Guarantor has made an "independent" obligation (Doc. 1-2 at 2, 8; and Doc. 26 at 16). See, e.g., Regions Bank v. Stewart, 2010 WL 2496186 (S.D. Ala. Jun. 14, 2010). And while the non-parties assert that the Guaranty somehow incorporates or is contingent on the non-parties rights under the Promissory Note, the PSA and OTA, this assertion is not supported by the plain language of the Guaranty. The proposed intervenor's have, at best, a speculative/contingent economic interest based on a possible indemnification judgment. Accordingly, the non-parties have not established entitlement to intervene as a matter of right and the motion in that regard is **DENIED.**

**C.   Permissive Intervention - Rule 24(b)**

Alternatively the non-parties seek permissive intervention to protect their interests as noted *supra*. Rule 24(b)(1)(B) provides in relevant part that: "(1) .... On timely motion, the court may permit anyone to intervene who: .... (B) has a claim or defense that shares with the main action a common question of law or fact." As the Eleventh Circuit noted in Sussman v. Secretary, Fla. Dept. of Corr., 2022 WL 53608, *1 (11th Cir. Jan. 6, 2022):

> A district "court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Generally, "[p]ermissive intervention under [Rule] 24(b) is appropriate where a party's

> claim or defense and the main action have a question of law or fact in common and the
> intervention will not unduly prejudice or delay the adjudication of the rights of the
> original parties." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312
> (11th Cir. 2005). However, "it is wholly discretionary with the court whether to allow
> intervention under Rule 24(b) and even though there is a common question of law or
> fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to
> allow intervention." *Worlds v. Dept. of Health & Rehab. Servs.*, 929 F.2d 591, 595
> (11th Cir. 1991) (quotation omitted).

The common question requirement is liberally construed, and when the proposed intervenor will assert
the same claims or defenses as those of an existing party, the requirement is met. Vazzo v. City of
Tampa, 2018 WL 1629216, *5 (M.D. Fla. Mar. 15, 2018).  As for undue delay or prejudice of the
adjudication of the rights of the original parties, "[i]f a proposed intervenor would add additional
witnesses, delay the discovery process, require additional discovery, or otherwise prolong litigation,
permissive intervention should be denied." Id.

    The non-parties reassert their same grounds for intervention as a matter of right for permissive
intervention. (Doc. 29 at 17). Upon consideration, for the same reasons set forth *supra* denying the
motion to intervene as a matter of right, the non-parties have not established entitlement to permissive
intervention. Moreover, permissive intervention would likely delay and prolong the federal litigation,
as the non-parties have made clear that a stay of the federal litigation, to pursue the indemnification
claim, will be their request.  The motion for permissive intervention (Doc. 29) is **DENIED.**

## III.   Conclusion

    Upon consideration, it is **ORDERED** that the motion to intervene (Doc. 29) is **DENIED**.

    **DONE** and **ORDERED** this the **12th** day of **January 2023.**


                    /s/ Kristi K. DuBose
                    **KRISTI K. DuBOSE**
                    **UNITED STATES DISTRICT JUDGE**